No. 93,922

In the Matter of JAMES BRYAN PATTISON, *Respondent.*

(121 P.3d 423)

Opinion filed October 21, 2005.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*James Bryan Pattison,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against James Bryan Pattison, of Hutchinson, an attorney admitted to the practice of law in Kansas.

The formal complaint filed against respondent alleges numerous violations of the Kansas Rules of Professional Conduct (KRPC). A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on November 16, 2004. Respondent appeared in person, pro se. The hearing panel granted the Disciplinary Administrator's motion to dismiss the allegation in Count II of the formal complaint. The panel heard evidence that respondent violated KRPC 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence and promptness); KRPC 1.7 (2004 Kan. Ct. R. Annot. 391) (conflict of interest); KRPC 4.2 (2004 Kan. Ct. R. Annot. 462) (communication with person represented by counsel), and KRPC 8.4 (2004 Kan. Ct. R. Annot. 485) (misconduct). The panel found, by clear and convincing evidence:

### Count I

"2.   On July 24, 2002, the Barton County Attorney's office filed four Child in Need of Care (CINC) cases regarding T.A.D., T.J.D., M.I.M., and M.C.M. K.D. is the mother of the four children. T.D. is the father of T.A.D. and T.J.D. M.M. is the father of M.I.M. and M.C.M.

"3.   The Court appointed the Respondent to serve as Guardian *ad Litem* for the four children.

"4.   The Barton County Attorney's office filed four CINC cases alleging that M.M. was abusing T.A.D. and T.J.D. by hitting them with a belt, that the emo-

tional and physical needs of the children were not being met, and that K.D. was unable to protect her children.

"5. On July 26, 2002, the Court held the temporary custody hearing. At that time, the Respondent, as the Guardian *ad Litem*, and the parents stipulated that the children were in need of care. The Court placed the children in the custody of SRS and recommended that the children be placed outside the home.

"6. On September 3, 2002, K.D. underwent a parenting and psychological evaluation at the Center for Counseling and Consultation by Gail Sullivan. K.D. submitted to psychological tests. . . . The written report of the evaluation was placed in the 'social file' of the CINC cases. While the 'social file' is confidential, as Guardian *ad Litem* the Respondent had access to the written report of the evaluation.

"7. Early in the case, Linda J. Knak, Assistant Barton County Attorney, began suspecting that the Respondent was involved personally or romantically with K.D. because he advocated K.D.'s position at the hearings held in the CINC cases, because Ms. Knak observed the Respondent and K.D. together in the hallway before and after hearings held in the CINC cases, and because the Respondent made recommendations in the CINC cases that were inconsistent with what other Guardians *ad Litem* made in cases involving similar facts.

"8. Throughout the time when the CINC cases were pending, and while the Respondent was acting as the Guardian *ad Litem*, the Respondent communicated with K.D. regarding the case, without first obtaining the consent of Don Reif, K.D.'s counsel. At some point, K.D. asked the Respondent to see a copy of the complaint documents. The Respondent provided the documents to K.D.

"9. By the end of 2002, the Respondent had developed an infatuation with K.D. Despite the Respondent's feelings regarding K.D., he failed to withdraw from his representation as Guardian *ad Litem*.

"10. Prior to a hearing held in the CINC cases in January, 2003, Ms. Knak approached the Respondent and suggested that he needed to withdraw from the case. The Respondent agreed. During the hearing, however, the Respondent did not withdraw from the case. Rather, the Respondent asked Magistrate Judge Marty Clark whether he believed that the Respondent needed to withdraw. At that time, Magistrate Judge Clark was aware that there were 'rumors that the Respondent and K.D. were involved personally or romantically.' The Respondent neither admitted nor denied that he was involved with K.D. at that time. Magistrate Judge Clark told the Respondent that he did not need to withdraw.

"11. During one evening in February, 2003, the Respondent went to a home of a friend of K.D.'s and assisted K.D. with babysitting seven children, including K.D.'s four children. The Respondent and K.D. watched a movie together. At some point during the evening, M.M. came to the house. A disagreement arose. The Respondent and K.D. took her four children and left the home. K.D. and the children spent the night in a motel.

"12. On March 4, 2003, Ms. Knak again approached the Respondent and told him that he needed to withdraw. Ms. Knak told the Respondent that if he did not

withdraw that she would file a motion and seek to have him removed. The Respondent smiled and told Ms. Knak that 'it was time.' That same day, the Respondent approached the bench after Magistrate Judge Clark completed an unrelated matter and moved the court to allow him to withdraw from his representation as the Guardian *ad Litem* for the four boys. From what the Respondent told Magistrate Judge Clark, the judge believed that the Respondent had become romantically involved with K.D. Magistrate Judge Clark allowed the Respondent to withdraw.

"13. On March 19, 2003, Ms. Knak filed a complaint with the Disciplinary Administrator's office. John Gatz, the Chairman of the KBA Ethics and Grievance Committee assigned Brock McPherson to investigate the complaint. During the course of the investigation, Mr. McPherson requested, on several occasions, that the Respondent call his office and schedule a personal interview. The Respondent never called Mr. McPherson's office to schedule a personal interview.

"14. Since that time, the children have been returned to the home of the mother and the CINC cases have been concluded. K.D. and the four boys reside with the Respondent in Wichita, Kansas."

## Count III

"15. The District Court of Barton County, Kansas, appointed the Respondent to serve as counsel for the father in a CINC case involving O.W.S. The court scheduled the formal hearing for November 5, 2002. The Respondent was provided with proper notice of the hearing. Without explanation, the Respondent failed to appear at the formal hearing. As a result, the court removed the Respondent [as] counsel for the father.

"16. The District Court of Barton County, Kansas, also appointed the Respondent to serve as the Guardian *ad Litem* in a CINC case involving H.W. The court scheduled a review hearing for March 4, 2003. The Respondent was provided with proper notice of the hearing. Without explanation, the Respondent failed to appear at the review hearing. The court, then, removed the Respondent as Guardian *ad Litem*.

"17. The District Court of Ellsworth County, Kansas, appointed the Respondent to represent Rodney G. Barnes in case number 02CR98. The Court scheduled a pretrial conference for April 7, 2003, in Mr. Barnes' case. The Respondent was provided with notice of the hearing. The Respondent failed to appear at the pretrial conference. During the hearing, Mr. Barnes informed the court that he had had no contact with the Respondent since the arraignment held on December 19, 2002, that the Respondent never informed him that the case was scheduled for a jury trial, and that he had tried unsuccessfully to contact the Respondent."

## The panel made the following conclusions of law:

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.7, KRPC 4.2, and KRPC 8.4, as detailed below.

"2. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to the father in *In re O.W.S.*, the child in *In re H.W.*, and Mr. Barnes when he failed to appear in court at scheduled hearings. Because the Respondent failed to act with reasonable diligence and promptness in representing the father in *In re O.W.S.*, the child in *In re H.W.*, and Mr. Barnes, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"3. KRPC 1.7(b) provides:

'A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless:

  (1) the lawyer reasonably believes the representation will not be adversely affected; and

  (2) the client consents after consultation . . . .'

In this case, the Respondent's own interests limited his ability to represent the children in *In re T.A.D., T.J.D., M.I.M., and M.C.M.* When the Respondent became personally and romantically involved with K.D., the Respondent developed a clear conflict of interest between his duties to his wards and her personal feelings for K.D. Additionally, the Respondent could not have reasonably believed that his representation of the children would not be adversely affected. Finally, the Respondent did not (and could not have) obtained the consent of his wards. The Hearing Panel concludes that the Respondent violated KRPC 1.7(b).

"4. The Kansas Rules of Professional Conduct prohibit attorneys from communicating with represented parties. *See* KRPC 4.2. That rule specifically provides, as follows:

'In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.'

The Respondent communicated with K.D. regarding the CINC cases when he knew K.D. was represented by Mr. Reif, without first obtaining Mr. Reif's consent. The Respondent engaged in this behavior throughout the pendency of the CINC cases. As such, the Hearing Panel concludes that the Respondent violated KRPC 4.2.

"5. KRPC 8.4 provides, in pertinent part, as follows:

'It is professional misconduct for a lawyer to:

. . . .

  (d) engage in conduct that is prejudicial to the administration of justice;

. . . .

  (g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

The Respondent violated KRPC 8.4(d) and KRPC 8.4(g), as detailed below:

"a. The Respondent engaged in conduct that was 'prejudicial to the administration of justice,' when he failed to report that M.M. violated the restraining order by having contact with K.D., T.A.D., and T.J.D. Additionally, the Respondent prejudiced justice when he failed to withdraw after he became 'infatuated' with K.D. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

"b. Becoming personally and romantically involved with K.D., while serving [as] the Guardian *ad Litem* for her children in the CINC cases, adversely reflects on the Respondent's fitness to practice law. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(g)."

## The panel then recommended as follows:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his clients to provide diligent communication. The Respondent also violated his duty to his clients to refrain from engaging in conflicts of interest. Finally, the Respondent violated his duty to the legal system to refrain from communicating with individuals in the legal system.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused potential injury to the legal system and to the children involved in the CINC cases.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on one occasion. On March 8, 2000, the Fourth District, Section I Subcommittee of the Virginia State Bar publicly reprimanded the Respondent for having violated DR 1-102(A)(4) and DR 7-102(A)(3), and DR 7-102(A)(7).

"Selfish Motive. The Respondent's misconduct was motivated by a selfish interest — engaging in a personal or romantic relationship with K.D.

"A Pattern of Misconduct. The Respondent engaged in a pattern of misconduct when he repeatedly failed to appear at scheduled court hearings. The Respondent also engaged in a pattern of misconduct when he continually and consistently, over a period of several months, engaged in conduct that was in conflict with the interests of his clients. Finally, the Respondent engaged in a pattern of misconduct when he repeatedly communicated with a represented party without the consent of adverse counsel.

"Vulnerability of Victim. The Respondent's four wards were vulnerable to his misconduct. Additionally, as a young mother with four children, K.D. was vulnerable to the Respondent's misconduct. The Respondent took advantage of the vulnerability of K.D. and her four young children.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Personal or Emotional Problems. Shortly before engaging in the misconduct, the Respondent went through a difficult divorce after having an affair with a student he taught at the junior college. This was a troublesome time for the Respondent.

"Remorse. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse for failing to appear at scheduled court hearings.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows of a client of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potentially injury to a client. Standard 4.32.

'Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding.' Standard 6.32.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of one year. The Hearing Panel further recommends that the Respondent be required to undergo a hearing, pursuant to Kan. Sup. Ct. R. 219 [2004 Kan. Ct. R. Annot. 312], prior to being allowed to resume the practice of law."

The court, having considered the record herein and the reports of the hearing panel, concurs in the findings, conclusions, and, in part, the recommendation of the panel. These findings of fact establish by clear and convincing evidence that the respondent violated KRPC 1.3, 1.7, 4.2, and 8.4, and support the panel's conclusions.

It Is Therefore Ordered that James Bryan Pattison be suspended from the practice of law in the state of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2004 Kan. Ct. R. Annot. 237).

IT IS FURTHER ORDERED that respondent forthwith comply with Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301), that the costs of these proceedings be assessed to the respondent, and that this opinion be published in the official Kansas Reports.

LARSON, S.J., assigned.